UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAMON DAVIS,

      Plaintiff,

vs.                                                                    Case No. 15-10805

JP MORGAN CHASE BANK, N.A.                            HON. AVERN COHN


      Defendant.

_____/


**MEMORANDUM AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS AND JUDGMENT ON THE**
**PLEADINGS (Doc. 15)[1]**

I.  Introduction

    This is an action surrounding residential property in Wayne County.  Plaintiff

Damon Davis (Davis), who initially filed suit pro se but is now represented by counsel, is

suing defendant JP Morgan Chase Bank, N.A. (Chase) contending that Chase violated

state and federal law in foreclosing on property which Davis says he had a right to as a

"bona fide" tenant of Jeffery Jackson.  In broad terms, Davis says that he had a right to

the property and Chase denied him the opportunity to purchase the property because of

his race.  The complaint claims (1) race discrimination under state law, (2) violation of

the Michigan Consumer Protection Act, and (3) specific performance, and (4) intentional

infliction of emotional distress.

------

    [1]Although originally scheduled for hearing, upon review of the parties' papers, the
Court deems this matter appropriate for decision without oral argument.  See Fed. R.
Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Before the Court is Chase's motion to dismiss on the grounds that Davis has failed to comply with discovery and because none of Davis' claims state a viable claim for relief.  For the reasons that follow, the motion is GRANTED.

II.  Background

A.

On June 14, 2004, Jeffrey Jackson (Jackson) obtained a $245,700.00 loan from Washington Mutual Bank, FA, a predecessor to Chase, to purchase the property.  As security for the loan, Jackson gave a mortgage on the property.

Jackson defaulted on his loan obligations.  Chase began foreclosure by advertisement.  Chase purchased the property at a Sheriff's Sale on April 21, 2010.  Jackson had a statutory right to redeem the property for six months before Chase would take title to the Property.  Jackson did not redeem the property.  As such, when the redemption period expired on October 21, 2010, Chase acquired title to the property. See M.C.L. § 600.3236.

On March 15, 2011 – nearly five months after Chase acquired title to the property – Jackson and Davis entered in a three-year lease agreement with Davis. (Lease Agreement, Ex. 1 to Davis' Complaint).  The Lease Agreement incorrectly states that Jackson was the "fee owner of the property."  Id.

On May 11, 2011, Chase filed a Complaint for Termination of Tenancy in the 34th District Court against Jackson and "all other occupants" of the Property.  Eventually, the state court granted Chase a Possession Judgment on July 23, 2012.  However, is appears that Davis remains on the property to date.

2

B.

On April 2, 2013, Davis filed a complaint in state court against Chase and Jackson seeking a declaration that he is entitled to remain on the property based on the Lease Agreement.  Davis also filed an "Emergency Petition for an Order to Show Cause."  The state court entered an Order to Show Cause on April 12, 2013, requiring Chase to appear "to show cause, if any, as to why it believes the Protecting Tenants at Foreclosure Act of 2009 is not applicable . . . ."

The state court denied Davis' request for injunctive relief.  Davis filed a request for leave to appeal.  The Michigan Court of Appeals denied the request.

Meanwhile, on April 30, 2013, the state court granted Chase's motion for summary judgment and dismissed Davis' complaint with prejudice.  Davis appealed. The Michigan Court of Appeals dismissed the appeal.

C.

On March 5, 2015, Davis, proceeding pro se, filed the instant complaint in this court.  On May 7, 2015, Chase served a Notice of Taking Deposition Duces Tecum and a Request for Production of Documents on Davis.  The deposition was noticed for June 12, 2015.

On June 10, 2015, an attorney contacted Chase's counsel and advised that she would be appearing as counsel for Davis and asked if Davis' deposition could be re-scheduled to June 30, 2015.  Chase agreed.  On June 29, 2015, Davis' counsel again requested an adjournment of the deposition.  Chase's counsel agreed and asked Davis' counsel to produce the requested documents.

On July 13, 2015, Davis' counsel advised that her client would appear on July 22,

3

2015 for the deposition.  However, on July 21, 2015, Davis' counsel cancelled the

deposition because she had not yet filed an appearance in the case.

On July 31, 2015, Chase served discovery requests on Davis to regarding his

claims of racial discrimination.  Davis did not respond.  Accordingly, Chase filed a

motion to compel, for production of documents, and to extend discovery.  (Doc. 10).

On August 24, 2015, the Court granted the motion, stating

> Davis is EXPRESSLY ORDERED to appear for a deposition and produce
> documents within two (2) weeks of this order, regardless of whether McGary files
> an appearance on his behalf.
> Davis is also EXPRESSLY ADVISED that a failure to appear for a
> deposition or provide timely responses may result in the imposition of sanctions,
> including dismissal.
> Discovery is extended 45 days from the date of this order.

(Doc. 10 at p. 4).

Following the Court's order counsel entered an appearance on Davis' behalf.

Chase also then sent a notice for Davis' deposition for September 2, 2015.  Davis did

not to appear and did not provide any alternative dates for his deposition.  Rather,

Davis' counsel sent Chase's counsel the following email:

> Just to confirm our telephone conversation over an hour ago, it appears
> my client, Mr. Davis, will not attend the deposition scheduled for today in your
> office at 10  am.  After preparing for the deposition a few days ago, we agreed to
> communicate this morning.  He has been contacted every half hour via cell
> phone this morning and text message since 6am this morning to no avail.  I must
> apologize from my client's decision.

Chase then filed the instant motion.

III.  Legal Standards

Under Rule 37(b), "[i]f a party . . . fails to obey an order to provide or permit

discovery, . . . the court where the action is pending may . . . dismiss[] the action or

proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v).

The standard of review under Rule 12(c) is the same as for Rule 12(b)(6).

Jelovsek v. Bredesen, 545 F.3d 431, 434 (6th Cir. 2008) (internal citations omitted).  A

Rule 12(b)(6) motion tests the sufficiency of a plaintiff's pleading.  The Rule requires

that a complaint "contain something more . . . than . . . a statement of facts that merely

creates a suspicion [of] a legally cognizable right of action." Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007)(internal citation omitted).  A "plaintiff's obligation to

provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Id. "[T]hat a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of

action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556

U.S. 662; 129 S. Ct. 1937, 1949 (2009). The court is "not bound to accept as true a

legal conclusion couched as a factual allegation."

IV.  Discussion

A.  Failure to Comply with Discovery

1.

As noted above, Rule 37 authorizes the imposition of sanctions for a party's

failure to make Rule 26(a)(1) disclosures, Rule 37(c)(1), or failure to respond to written

discovery requests or to attend one's own deposition, Rule 37(d)(1).  A court has wide

discretion in determining an appropriate sanction under Rule 37.  National Hockey

League v. Metropolitan Hockey Club, 427 U.S. 639 (1976); Regional Refuse Systems v.

Inland Reclamation Co., 842 F.2d 150, 154 (6th Cir.1988).  When assessing the

5

dismissal of a complaint as a sanction for discovery, the Court considers four factors: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) "whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery"; (3) "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered." Harmon v. CSX Transp., Inc., 110 F.3d 364, 366-67 (6th Cir. 1997). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002).

2.

Here, consideration of the above factors favors dismissal. Davis has failed to appear for a properly noticed deposition three times and has not responded to discovery. Davis also disregarded the Court's order. While Davis says that he failed to appear for the last noticed deposition because he was at work, the email from Davis' counsel to Chase's counsel makes no mention of Davis being at work. The Court finds Davis' actions are wilful. Chase has also been prejudiced by Davis' failure to provide discovery. As to whether other sanctions were considered, the Court did not impose any sanctions in response to Chase's motion to compel, but gave Davis an opportunity to remedy the situation. The Court also expressly warned Davis that a failure to appear for a deposition or produce documents "may result" in sanctions, "including dismissal." Under the circumstances, the complaint is subject to dismissal as a consequence for Davis' failure to cooperate in discovery.

6

B.  Judgment on the Pleadings

1.

Chase says that even the complaint was not dismissed as a discovery sanction, it is still subject to dismissal for several reasons.  The Court agrees.  Chase's arguments are addressed in turn below.

First, Chase says that the complaint is barred by the doctrines of res judicata and collateral estoppel.  Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.  The Michigan Supreme Court has adopted the "broad" application of the res judicata doctrine, barring both claims actually litigated in a prior action and those claims arising out of the same transaction which plaintiff could have brought, but did not.  Gose v. Monroe Auto Equipment Co., 409 Mich. 147, 160 (1980); Vutci v. Indianapolis Life Ins. Co., 157 Mich. App. 429, 436 (1987).  The test for determining whether two claims arise out of the same transaction and are identical for res judicata purposes is whether the same facts or evidence is essential to the maintenance of the two actions.  Mazzola v. Vineyard Homes, Inc., 54 Mich. App. 608, 613-614; (1974); 221 N.W.2d 406 (1974).

The requirements of res judicata are met.  First, there was a final decision on the merits by a court of competent jurisdiction.  The state court entered a judgment of possession in favor of Chase.  At that point, Chase had the right to evict Davis and take possession of the property.  Moreover, Davis sued Chase and Jackson in state court seeking possession and his lawsuit was ultimately dismissed for lack of merit.

Second, there is an identity of the causes of action.  In both the eviction action and Davis' state court action, he sought to contest Chase's right to the property, as he

7

does in this action.  As such, any claims that Davis may have against Chase regarding possession of the property are barred by res judicata.

In addition to res judicata, the collateral estoppel doctrine is also applicable. Collateral estoppel bars re-litigation of the same issues in a subsequent lawsuit where each of the following applies: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties (or someone standing in a relationship of privity) must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel.  See Monat v. State Farm Ins., Co., 469 Mich. 679, 682-85 843 (2004).

The second and third elements are clearly established here, as the parties are identical and the same ultimate issue–Davis' right to the property is involved.  The eviction action named Jackson and "all other occupants," which clearly covered Davis. The fact that Davis also sued Jackson in state court does not preclude res judicata or collateral estoppel.  What matters is that in both the eviction action and Davis' state court action, Davis' right to the property against Chase was litigated and decided against him.

2.

Chase also says that dismissal is warranted because none of Davis' claims are viable.  The Court agrees.  As to Davis' discrimination claim under Count I, Davis must show that: (1) he is a member of a racial minority; (2) he applied for and was qualified to rent or purchase certain property or housing; (3) he was rejected; and (4) the housing remained available thereafter.  Mencer v. Princeton Square Apartments, 228 F.3d 631, 634-35 (6th Cir., 2000).

8

Davis has not alleged or established that he was qualified to rent or purchase the property. The Lease Agreement was between Davis and Jackson. However, Chase, not Jackson, owns the property. The complaint does not allege any facts from showing that Davis applied, and was qualified, to rent or purchase the property from Chase. Count I must be dismissed.

In Count II, Davis alleges that Chase has violated the Michigan Consumer Protection Act (MCPA) for "engaging in unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce." The complaint is devoid of any factual support for the alleged violation of the MCPA. Moreover, the claim fails because Chase is exempt from the MCPA. See Binford v. John Adams Mortgage, No. 10–12390, 2011 WL 4469131, at *3 (E.D. Mich. Sept 27, 2011) ("Plaintiffs' claim of MCPA violations also fails: with respect to Bank of America and Countrywide, as federally chartered institutions, these Defendants are exempt from the act.").

In Count III, Davis says he is entitled to specific performance. A plaintiff seeking specific performance has the burden of establishing by clear, satisfactory, and convincing proof all the elements to establish a contract, including that the plaintiff performed (or tendered performance of) all his or her obligations under the contract. Fisk v. Fisk, 328 Mich. 570, 574 (1950).

Here, Davis has not allege that he had a binding contact with Chase. The Lease Agreement was with a former owner of the property, not between Davis and Chase. Count III must be dismissed.

Finally, in Count IV, Davis alleged intentional infliction of emotional distress. To make out a claim, Davis must allege "(1) extreme and outrageous conduct; (2) intent or

9

recklessness; (3) causation; and (4) severe emotional distress." <u>Atkinson v. Farley</u>, 171 Mich. App. 784, 788 (1988)

The complaint falls far short of alleging "extreme and outrageous" conduct that would give rise to a claim for intentional infliction of emotional distress.  Davis' claims are based on Chase's foreclosure and attempts to evict Davis, which the state courts have confirmed Chase had a right to pursue.  Other courts have held that actions associated with mortgage foreclosure do not give rise to a claim for intentional infliction of emotional distress.  See <u>Robbins v. Mortgage Elec. Registration Sys.</u>, 2009 U.S. Dist. LEXIS 104101, 2009 WL 3757443 (W.D. Mich. Nov. 9, 2009).  As such, Davis has not plead a viable cause of action for intentional infliction of emotional distress.  Count IV must be dismissed.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: December 3, 2015
          Detroit, Michigan